UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| CHRISTINA SILVERA, ) | |
| ) | |
| Plaintiff, ) | Case: 4:24-cv-04003 |
| ) | |
| v. ) | |
| ) | |
| MAXIM HEALTHCARE STAFFING ) | |
| SERVICES, INC. and MABLEY FAMILY ) | Jury Trial Demanded |
| ASSOCIATION, INC. d/b/a JACK MABLEY ) | |
| DEVELOPMENTAL CENTER, ) | |
| Defendants. | |

## COMPLAINT

**NOW COMES** Christina Silvera ("Plaintiff"), by and through her undersigned counsel, complaining of Maxim Healthcare Staffing Services, Inc. ("Maxim") and Mabley Family Association, Inc. d/b/a Jack Mabley Developmental Center ("Jack Mabley") (collectively, "Defendants") as follows:

### NATURE OF PLAINTIFF'S CLAIMS

1. Plaintiff brings this action seeking redress for Defendants' violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5 *et seq*. ("Title VII").

### JURISDICTION AND VENUE

2. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as Title VII is a federal statute.

3. Venue in this district is proper under 28 U.S.C. § 1391(b)(2) as a substantial portion of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

### ADMINISTRATIVE PREREQUISITES

4. All conditions precedent have been satisfied.

5. Plaintiff filed a charge of discrimination against Maxim with the Equal Employment Opportunity Commission ("EEOC"). *See* attached Exhibit A.

6. Plaintiff received a Notice of Right to Sue from the EEOC as to Maxim and Plaintiff filed this action within ninety (90) days of Plaintiff's receipt of the EEOC's Notice of Right to Sue. *See* attached Exhibit B.

7. Plaintiff filed a charge of discrimination against Jack Mabley with the Equal Employment Opportunity Commission ("EEOC"). *See* attached Exhibit C.

8. Plaintiff received a Notice of Right to Sue from the EEOC as to Jack Mabley and Plaintiff filed this action within ninety (90) days of Plaintiff's receipt of the EEOC's Notice of Right to Sue. *See* attached Exhibit D.

## THE PARTIES

9. Plaintiff is a natural person, over 18-years-of-age, who at most times relevant resided in this judicial district.

10. Defendant Maxim is a healthcare staffing agency that assigns its employees to perform healthcare services in different states, including Illinois. Maxim is registered with the Illinois Secretary of State and maintains a registered agent in Springfield, Illinois.

11. Defendant Jack Mabley is a developmental center that serves individuals with developmental disabilities. Jack Mabley operates a developmental center in Dixon, Illinois where Plaintiff was employed.

12. At all times relevant, Maxim had at least fifteen employees, was an "employer" as defined by Title VII, and was engaged in an industry affecting commerce within the meaning of Title VII, 42 U.S.C. §2000e(b).

13. At all times relevant, Jack Mabley had at least fifteen employees, was an

"employer" as defined by Title VII, and was engaged in an industry affecting commerce within the meaning of Title VII, 42 U.S.C. §2000e(b).

## FACTUAL ALLEGATIONS

14. Plaintiff was jointly employed by Defendants as a registered nurse from June 30, 2023, through September 30, 2023 when her contract expired.

15. Maxim assigned Plaintiff to work at Jack Mabley's developmental center in Dixon, Illinois.

16. Maxim maintained control and supervision over Plaintiff because as a staffing agency, Maxim was in control of finding job placements and job opportunities for Plaintiff, decided which jobs were presented and offered to Plaintiff, acted as a liaison between Plaintiff and Jack Mabley, and communicated on behalf of Plaintiff.

17. Additionally, Maxim maintained control and supervision over Plaintiff because Maxim initially vetted Plaintiff for the specific skills and experience that Jack Mabley needed to fill a critical internal role in Jack Mabley's operations.

18. Jack Mabley also exercised significant control and supervision over Plaintiff as Plaintiff worked in Jack Mabley's facility under the supervision of Jack Mabley managers.

19. Additionally, Jack Mabley vetted and trained Plaintiff for the specific skills and experience that Jack Mabley needed to fill a critical internal role in their operations.

20. Moreover, Jack Mabley assigned Plaintiff's day-to-day tasks and job responsibilities, supervised Plaintiff's duties, controlled and issued Plaintiff's schedule, bore the costs of operation of the facility in which Plaintiff worked, promulgated policies and procedures that Plaintiff was subject to, and had the ability to determine the length of Plaintiff's job commitment.

21. Plaintiff, as an African American, is a member of a protected class.

22. Throughout the duration of her joint employment, Defendants subjected Plaintiff to different terms and conditions of employment than others not within her protected class and subjected Plaintiff to a hostile work environment on the basis of her race.

23. Shortly after commencing her assignment at Jack Mabley, Plaintiff quickly realized that the nursing staff at Jack Mabley was predominantly Caucasian as she was one of only three African-American registered nurses at Jack Mabley.

24. Plaintiff quickly realized that she and other African-American nurses were treated differently than the non-African-American nurses.

25. Specifically, all three African-American nurses were consistently assigned to the inferior role of "sitter," despite the fact that they were all registered nurses.

26. The "sitter" role assigned to the African-American nurses was clearly an inferior role as it entailed merely sitting with patients without the opportunity to carry out customary registered nurse duties such as vital sign assessments and other meaningful nursing responsibilities.

27. Moreover, Plaintiff started noticing that the African-American nurses were being disproportionally assigned to dangerous patients that had a history of violence and aversion for African-American nurses.

28. On or about June 29, 2023, Plaintiff was assigned to be the "sitter" for a challenging non-verbal patient who had previously demonstrated a strong aversion for nurses of color.

29. During this assignment, the patient became aggressive and spit on Plaintiff twice.

30. Plaintiff later discovered this patient was diagnosed with Hepatitis C, therefore requiring Plaintiff to seek immediate medical attention as a result of coming into contact with the

4

patient's saliva.

31. Shortly after the spitting incident, Plaintiff contacted her recruiter at Maxim and on-site manager at Jack Mabley to report the incident.

32. While reporting the incident to Defendants, Plaintiff also reported/complained of the disparity of assignments between the non-African-American nurses and African-American nurses.

33. Unfortunately, Defendants failed to conduct any investigation into Plaintiff's complaints or otherwise take any action to remedy the racial discrimination despite being on notice of the racial discrimination that the African-American nurses were being subjected to.

34. Instead, Defendants continued to assign Plaintiff and the other African-American nurses to work dangerous sitter roles.

35. Moreover, Plaintiff was forced to continue to put her health at risk by being assigned to the dangerous patients along with the other African-American nurses until her contract expired in September 2023.

## **DAMAGES**

36. As a result of Defendants' conduct as set forth herein, Claimant suffered an adverse employment action in the form of demotion to the "sitter" role. As set forth above, the "sitter" role did not require any skills or duties that are typically associated with registered nurses and was known be a non-nursing role at Jack Mabley.

37. As a result of Defendants' conduct, Plaintiff suffered significant damages, including severe emotional distress, mental anguish, decreased self-esteem, repeated exposure to deadly diseases, perpetual fear, humiliation, and decreased satisfaction of life.

## COUNT I
### Violations of Title VII of the Civil Rights Act of 1964
### (Race-Based Discrimination)
### (Against Both Defendants)

38. Plaintiff repeats and re-alleges all the previous Paragraphs as though fully set forth herein.

39. Title VII prohibits employers from discriminating against employees with respect to her or his compensation, terms, conditions, or privileges of employment, because of her or his race, color, religion, or national origin.

40. Defendant unlawfully discriminated against Plaintiff based on her race by (1) repeatedly assigning Plaintiff to the inferior "sitter" role, and (2) repeatedly assigning Plaintiff to dangerous patients.

41. As set forth above, the disparate treatment of Plaintiff and other African-Americans was solely based on race and was not based on any legitimate business purpose.

42. As set forth above, Plaintiff suffered damages as a result of Defendants' conduct.

**WHEREFORE**, Plaintiff requests the following relief:

    a. Judgment in Plaintiff's favor and against Defendant;

    b. An award of compensatory damages;

    c.
    d. An award of punitive damages;

    e. An award of pre-judgment and post-judgment interest;

    f. An award of reasonable attorney's fees and costs; and

    g. Any further relief the Court may deem just and proper.

**COUNT II**
**Violation of Title VII of the Civil Rights Act of 1964**
**(Race-Based Harassment and Hostile Environment)**
**(Against Both Defendants)**

43. Plaintiff repeats and re-alleges all the previous Paragraphs as though fully set forth herein.

44. "To prove a claim [under Title VII] for hostile work environment based on race an employee must show that: '(1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability.'" *Williams v. Waste Management of Illinois, Inc.,* 361 F.3d 1021, 1029 (7th Cir. 2004).

45. Defendants unlawfully harassed Plaintiff based on her race by (1) repeatedly assigning Plaintiff to the inferior "sitter" role, and (2) repeatedly assigning Plaintiff to dangerous patients.

46. The harassment was severe and pervasive as it continued even after Plaintiff complained of the implicit harassment.

47. Moreover, the inferior and dangerous assignments amounted to Defendants subjecting Plaintiff to a hostile work environment as the assignments were made for an extended period of time.

48. As set forth above, Plaintiff suffered damages as a result of Defendants' conduct.

**WHEREFORE**, Plaintiff requests the following relief:

    h.    Judgment in Plaintiff's favor and against Defendant;

    i.    An award of compensatory damages;

j. An award of punitive damages;

k. An award of pre-judgment and post-judgment interest;

l. An award of reasonable attorney's fees and costs; and

m. Any further relief the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: January 3, 2024    Respectfully Submitted,

/s/ *Mohammed O. Badwan*

Mohammed O. Badwan, Esq.
Sulaiman Law Group, Ltd.
2500 S. Highland Ave., Ste. 200
Lombard, IL 60148
Phone (630) 575-8180
mbadwan@sulaimanlaw.com
*Counsel for Plaintiff*

8